**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:24-CV-00076-DJH-CHL**

LAUREN DODD,                                                                            **Plaintiff,**

**v.**

HENDRICKSON USA, LLC,                                                        **Defendant.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court are two Motions to Compel filed by Defendant Hendrickson USA, LLC ("Defendant"). (DNs 25, 35.) Plaintiff Lauren Dodd ("Plaintiff") has filed a response to each Motion. (DNs 29, 36.) Accordingly, both Motions are ripe for review. For the foregoing reasons, Defendant's First Motion to Compel (DN 25) is **GRANTED IN PART** and Defendant's Second Motion to Compel (DN 35) is **DENIED**.

**I.      Background**

This case concerns Plaintiff's allegations of gender and disability discrimination against her former employer. (DN 1-1.) Plaintiff was a Human Resources Representative for Defendant until she left her job on April 11, 2023. (DN 1-1, at PageID # 12, ¶ 51.) Plaintiff alleges that she was constructively discharged because of criticisms leveled against her, including her alleged absenteeism, tardiness, early departure, and job performance. (DN 1-1, at PageID # 10, ¶ 35.) Plaintiff alleges that these criticisms were motivated by her disabilities and her duties as a mother, in violation of the ADA, the KCRA, and Title VII. (DN 1-1.)

On May 24, 2024, Plaintiff served her responses to Defendant's first set of discovery requests. (DN 29-2.) On June 28, 2024, Plaintiff served her "Supplemental and Corrected Responses and Answers to Defendant's First Set of Discovery Requests." (DN 25-2.) Counsel

for Defendant had several issues with Plaintiff's first set of responses and her supplemental responses. First, counsel for Defendant took issue with the fact that Plaintiff had consolidated all her supplemental responses in a separate document rather than incorporate them with her original discovery responses. (DN 20.) Second, Defendant's counsel asserted that Plaintiff produced her responses to its requests for production in one unorganized document dump, without any indication as to what request each document was a response to. (*Id.*) The Court held a telephonic status conference with the Parties to discuss these issues, among others. (*Id.*) Counsel for Plaintiff agreed to label her document production to correspond with the request that each document was in response to. (*Id.*) However, several issues remained. The Court did not see any reason to order Plaintiff to consolidate her supplemental responses with her original responses but invited counsel for Defendant to file a motion on the issue. (DN 23.) Counsel for Defendant also took issue with Plaintiff's objections and responses in her revised set of document productions. (DN 25-3.) Moreover, counsel for Defendant asserted that many of Plaintiff's supplemental interrogatory responses were incomplete. (DN 25-2.) Accordingly, Defendant filed its first Motion to Compel to resolve these issues. (DN 25.)

The Parties then notified the Court of an additional discovery dispute, and the Court held a second telephonic status conference to discuss the new dispute. (DN 34.) Defendant asserted that it had requested Plaintiff to produce her cell phone for forensic imaging, but Plaintiff objected. (*Id.*) Additionally, Defendant asserted that it had received additional documents from Plaintiff, and it wanted to depose Plaintiff again based on these newly produced documents. (*Id.*) Accordingly, Defendant filed its second Motion to Compel. (DN 35.)

## II.    Analysis

### A.    Standard of Review

The scope of discovery is within the sound discretion of the trial court. *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981). The reviewing court reviews a ruling by the trial court limiting or denying discovery under an abuse of discretion standard. *Id*. An abuse of discretion exists when the reviewing court is "firmly convinced" that a mistake has been made. *Bush v. Rauch*, 38 F.3d 842, 848 (6th Cir. 1994).

### B.    Motion to Compel

Under Rule 26(b)(1), parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED R. CIV. P. 26(b)(1). After making a good faith attempt to resolve a discovery dispute, a party may move for an order compelling disclosure or discovery. FED. R. CIV. P. 37(a).

Relevance includes "any matter that bears on, or that reasonably could lead to other matter that could bear on," the claims or defenses of any party. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). A request for discovery seeks relevant information if there is any possibility that the information sought may bear on a claim or defense of any party. *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007). Relevance is a broad standard, and the party resisting production must show that the material is either irrelevant, or of such marginal relevance that the potential harm in producing the information outweighs the broad presumption in favor of disclosure. *Id*. The party resisting discovery bears a heavy burden in demonstrating that disclosure will cause a clearly defined and very serious injury. *Id*.

### 1.    Defendant's first Motion to Compel

Defendant's first Motion to Compel (DN 25) concerns Defendant's issues with Plaintiff's Supplemental and Corrected Responses and Answers to Defendant's First Set of Discovery

Requests (DN 25-2), and Plaintiff's Corrected Responses to Defendant's First Set of Requests for Production of Documents.  (DN 25-3.)

**a)      Plaintiff's Supplemental and Corrected Responses and Answers to Defendant's First Set of Discovery Requests**

**(1)      The sufficiency of Plaintiff's responses to Defendant's First Set of Interrogatories**

Under Rule 37, an evasive or incomplete disclosure, answer, or response is a failure to disclose, answer, or respond.  FED. R. CIV. P. 37(a)(4).  This rule prevents parties from reading discovery requests in an "artificially restrictive" manner to avoid disclosing responsive information.  FED. R. CIV. P. 37(a) advisory committee's note to 1993 amendment.  As such, an evasive or incomplete answer is grounds for an order to compel.  FED. R. CIV. P. 37(a)(3)(B)(iii).

**(a)      Interrogatory No. 2**

Defendant asserts that Plaintiff's response to Interrogatory No. 2 is incomplete because Plaintiff's Supplemental and Corrected Responses only include one person who treated, diagnosed, or examined Plaintiff for the condition of Epstein-Barr Virus, without including the other disabilities alleged in the complaint.  (DN 25, at PageID # 159.)  Defendant also asserts that Plaintiff's response is incomplete because it identifies the location of a chiropractor's office without identifying the individual who treated, diagnosed, or examined Plaintiff, or for which of the conditions that Plaintiff alleged in her complaint.  (*Id*.)  Plaintiff argues that she completely answered this interrogatory in her May 24, 2024, responses, and in her June 28, 2024, supplemental responses.  (DN 29, at PageID # 243.)

Here, Interrogatory No. 2 requests that Plaintiff "[i]dentify all persons who have diagnosed, examined, or treated Plaintiff for the 'disability' conditions set forth in Paragraph 60 of the Complaint during the years 2022 or 2023, and with respect to each such person, identify the

'disability' such person diagnosed, examined Plaintiff for, or treated." (DN 29-2, at PageID # 259.) Paragraph 60 of Plaintiff's complaint alleges that "Plaintiff has disabilities in the form of Epstein-Barr Virus, high anxiety, degenerative disc disease, and chronic migraines." (DN 1-1 at ¶ 60.) In Plaintiff's Supplemental Responses, she identifies the clinician that treated her for Epstein Barr Virus and provides the location of Commonwealth Family Chiropractic. (DN 25-2, at PageID # 177.) The supplemental response also incorporates Plaintiff's May 23, 2024, answers as if set forth fully. (*Id*.) In those responses, Plaintiff identifies others who have treated her for the disabilities set forth in her complaint. (DN 29-2, at PageID # 259.) The Court does not see how these two responses, read together, are unresponsive. Accordingly, the Court finds that Plaintiff's response to Interrogatory No. 2 is sufficient.

### (b)    Interrogatory No. 4

Here, Defendant asserts that Plaintiff's response to Interrogatory No. 4 is incomplete. Defendant asserts that it requested Plaintiff to identify all sources of income to Plaintiff, including positions of employment held by Plaintiff after she quit Defendant's employment on April 11, 2023. (DN 25, at PageID # 159.) In Plaintiff's supplemental answer, she lists the address of the Fort Knox Army Base and incorporates her May 23, 2024, answer as if set forth fully. In her May 23, 2024, answer, Plaintiff states that she has worked for the Department of the Army since August 2023 as a Human Resources Assistant. (DN 29-2, at PageID # 260.) Again., the Court does not see how this answer is unresponsive. Defendant is focused *solely* on Plaintiff's supplemental response without acknowledging that Plaintiff's May 23, 2024, answers, that are incorporated in her supplemental responses, are responsive to Interrogatory No. 4. Accordingly, the Court finds that Plaintiff's response to Interrogatory No. 4 is sufficient.

### (c)    Interrogatory No. 5

Interrogatory No. 5 requests that Plaintiff "identify by date and method, all positions of employment applied for, pursued or sought by Plaintiff on or after January 1, 2023. (DN 25-2, at PageID # 177.)

### (i)    Objections

Plaintiff objects to this interrogatory on several grounds the Court finds frivolous. Plaintiff argues that this request is confusing because "identifying positions of employment 'by date and method' does not make sense." (DN 29-2, at PageID # 260.) The Court notes this is not what Interrogatory No. 5 is asking of Plaintiff. Interrogatory No. 5 is asking Plaintiff to identify "all positions of employment *applied for*" by date and method. (*Id.*) (emphasis added). The Court does not see how Plaintiff should have any problem providing Defendant with a list of positions she applied for, the dates she applied for those positions, and the method that she used to apply for those positions. Considering Plaintiff is now asserting that her LinkedIn and Indeed histories are responsive to this interrogatory, she clearly no longer finds the request vague and confusing. (DN 29, at PageID # 244.) ("Plaintiff's document production clearly labeled these documents, making it easy for Defendant to examine her job search efforts and understand what she did to find work after her employment with Hendrickson ended.") Moreover, the Court does not find Plaintiff's objection that the interrogatory "implies that Defendant is entitled to damages offset for any gig work that Plaintiff did for which she could have also worked for Defendant under her previous schedule or held a similar replacement job in lieu of the position she held with Defendant" to be a sufficient objection. (DN 29-2, at PageID # 260.) The Court is not convinced that a party's presumption that discoverable information may be used to imply an incorrect legal conclusion is a valid objection to discovery, nor does Plaintiff provide any authority to support such an argument. Accordingly, the Court finds Plaintiff's objections invalid.

**(ii)    Sufficiency of Responses**

Finding Plaintiff's objections invalid, the Court now turns to the sufficiency of her responses.  A party may respond to an interrogatory by specifying records that must be reviewed in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could and by giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.  FED. R. CIV. P. 33(d).  It is generally insufficient for a party to direct the requesting party to rummage through other discovery materials.  *Mulero-Abreu v. Puerto Rico Police Dep't*, 675 F.3d 88, 93 (1st Cir. 2012).

Plaintiff answers Interrogatory No. 5 by referring to her document production without specifying the documents responsive to this interrogatory.  (DN 29-2, at PageID # 260.)  In Plaintiff's supplemental responses, she incorporates her first set of interrogatory responses.  (DN 25-2, at PageID # 178.)  Neither of these responses complies with Rule 33(d).  Plaintiff must specify the records that are responsive to Defendant's interrogatories in detail, she may not direct Defendant to rummage through other documents to find the answer to its question.

In Plaintiff's response brief, she asserts that her Indeed and LinkedIn histories produced in their native forms are responsive to Defendant's Interrogatory.  (DN 29, at PageID # 243-244.)  Even if they were, Plaintiff did not refer to her Indeed and LinkedIn histories in her answer to Interrogatory No. 5; she referred to them in her response to RFP No. 1.  (DN 25-3, at PageID # 188.)  If Plaintiff intended for these documents to serve as her answer to Interrogatory No. 5, she should have referred to them *in her response to Interrogatory No. 5*.  Instead, Plaintiff referred to her "Supplemental Document Production, produced concurrently with this Answer."  Accordingly,

the Court finds that Plaintiff's response to Interrogatory No. 5 is unresponsive and will instruct Plaintiff to either answer the interrogatory, or specifically refer to any responsive document.

### (d)    Interrogatory No. 11

Interrogatory No. 11 requests that Plaintiff "[i]dentify all documents in Plaintiff's possession, custody or control, that relate to, or refer to the factual allegations set forth in Paragraphs 50 and 56 of the Complaint." (DN 25-2, at PageID # 178.) Paragraph 50 of the complaint states "Lauren was being left out of meetings and HR decisions that she had previously been seen as integral in assisting; Stephanie was referring to her illnesses repeatedly, including in front of non-essential employees; Dan Martinez had another meeting with Lauren, in-person, in which he attempted to bully her to drop her complaints against Stephanie; her job duties began to become secretarial instead of HR; she was increasingly micromanaged; no investigation was ever conducted into her complaints; and she felt that she could no longer safely speak up about issues at the plant that needed attention." (DN 1-1, at PageID # 12, ¶ 50.) Paragraph 56 states that "Defendant Hendrickson deliberately created intolerable working conditions after learning that Plaintiff suffered from disabling illnesses and her status as a parent in the form of hostility, attempts to silence her from engaging in further protected activity, increased workload, increased scrutiny, exclusion from meetings and HR decisions that she had previously been seen as integral in assisting, repeated references to her illnesses, including in front of non-essential employees, attempts to bully her to drop her complaints against her manager, decreases in prestige in her job duties, escalating micromanagement." (*Id*. at PageID # 13, ¶ 56.)

Plaintiff has objected to this interrogatory as "calling for her counsel's privileged work product and mental impressions. Plaintiff further objects to this interrogatory as requesting information already in Defendant's possession. Plaintiff additionally objects to this Interrogatory

as premature, inasmuch as discovery is in its early stages, and Plaintiff cannot guarantee that further responsive information will not be uncovered across the duration of this litigation. To that end, Plaintiff reserves the right to supplement her response to this Interrogatory under the Federal Rules of Civil Procedure." (DN 29-2, at PageID # 263.)

A party may respond to an interrogatory by objecting to it with specificity. FED. R. CIV. P. 33(b)(4). Any ground not stated in a timely objection is deemed waived unless the court, for good cause, excuses the failure. *Id*. This is true even when the objecting party makes a claim of privilege. *See United States v. Hatchett*, 862 F.2d 1249, 1252 (6th Cir. 1988). When a party withholds otherwise discoverable information based on privilege, the party must expressly claim that privilege and describe the nature of the documents, communications, or tangible things not produced or disclosed in a manner that enables other parties to assess the claim without waiving the privilege. FED. R. CIV. P. 26(b)(5).

### (i)    Attorney-Client Communications

Plaintiff claims Interrogatory No. 11 seeks privileged attorney-client communications. Plaintiff does not explain in her response why the request seeks attorney-client communications. To the contrary, the Court's review of the interrogatory shows that it merely seeks documents that support the allegations in two specific paragraphs of the Complaint. The Court does not see how these requests seek confidential attorney-client communications and thus finds Plaintiff's objection insufficient. Additionally, to the extent the request actually implicates the attorney client privilege (or work product doctrine discussed below), Plaintiff's remedy is to withhold such documents from production and identify them in a privilege log. A blanket assertion of privilege cannot excuse a failure to substantively respond to a discovery request.

### (ii)    Attorney Work Product

Plaintiff also objected to this request based on the attorney work product doctrine. The Court finds this objection to be frivolous. Plaintiff's response brief does not support her argument that such material is protected under the work product doctrine. Plaintiff's only argument for this is that Interrogatory No. 11 asks Plaintiff to "identify all documents that support one aspect of her theory of constructive discharge." (DN 29, at PageID # 245.) Plaintiff's objection relies on the premise that every time an attorney is identifying or producing requested documents, he or she is disclosing his or her mental impressions by producing or identifying those he or she deems relevant and proportional. If that were true, discovery would be impossible. *See Oppenheimer*, 437 U.S. at 351. Accordingly, the Court finds Plaintiff's objection insufficient.

### (iii)    Plaintiff's other objections

Plaintiff's other objections are equally frivolous. The fact that responsive documents are already in Defendant's possession is not a valid objection. *See Focuspoint Int'l, Inc. v. Baldeo*, No. 1:20-CV-2019, 2023 WL 2241310, at *5 (N.D. Ohio Feb. 6, 2023). Moreover, even if Defendant did possess responsive documents already, it is Plaintiff's responsibility to specify the records that must be reviewed, provide a complete response to the interrogatory, or state her grounds for objecting with specificity. Fed. R. Civ. P. 33. The fact that Plaintiff cannot "guarantee that further responsive information will not be uncovered" is also not a valid objection. Parties are under a continuing duty to supplement disclosures or responses when they uncover additional or corrective information. Fed. R. Civ. P. 26(e). The Court does not see how this translates into a duty to withhold information because additional or corrective information may be uncovered later. Finally, Plaintiff objects to this interrogatory as a contention interrogatory. (DN 29-2, at PageID # 264.) A contention interrogatory is an interrogatory that seeks to clarify the basis for or scope of an adversary's legal claims. *Starcher v. Corr. Med. Sys., Inc.*, 144 F.3d 418, 421 n.2 (6th

Cir. 1998). The general view is that such interrogatories are permissible. *Id.* This Court even permits premature contention interrogatories, relying on the mechanism of Rule 26(e) to account for changes in what parties discover throughout litigation. *See Chelsey Nelson Photography LLC v. Louisville/Jefferson Cnty. Metro Gov't*, 556 F.Supp.3d 657, 679 (W.D. Ky. 2021). But courts have the discretion to postpone a response to contention interrogatories until discovery is closer to completion. *Id.* The Court will not address whether this is truly a contention interrogatory. Instead, the Court notes that the fact discovery deadline of November 1, 2024, has passed. (DN 15.) Additionally, Defendant's Motion was filed October 30, 2024, two days before the deadline passed. (DN 25.) Moreover, Plaintiff represented to the Court that she believed "the parties have very few outstanding discovery matters to complete before the close of discovery." (DN 26.) Accordingly, the Court finds that even if this were a valid objection, it is now moot.

### (iv)  The sufficiency of Plaintiff's response

Finding that Plaintiff's objections are not sufficient to withhold discovery, the Court now turns to the sufficiency of Plaintiff's response. In Plaintiff's May 23, 2024, answers to Defendant's First Set of Interrogatories, she states that "she has provided all non-objectionable documents in her possession. Plaintiff declines to characterize any document beyond its contents." (DN 29-2, at PageID # 264.) In Plaintiff's Supplemental Responses, she states that she "adopts and incorporates her May 23, 2024 Answer to Interrogatory No. 11 as if set forth fully, and further states that she declines to characterize any documents beyond their contents, and that she has produced any documents in her possession, custody, or control that are responsive to this request. Plaintiff intends this Supplemental Answer to include her May 23, 2024, document production and her supplemental document production, produced concurrently with this Supplemental Answer." (DN 25-2, at PageID # 178.) As discussed regarding Plaintiff's response to Interrogatory No. 5,

this is not a sufficient response under Rule 33(d).  Accordingly, the Court will instruct Plaintiff to either provide a complete response to this interrogatory or refer to produced documents with specificity that sufficiently answer this interrogatory.

### (e)    Interrogatory No. 12

Defendant argues that Plaintiff's response to Interrogatory No. 12 is deficient. Interrogatory No. 12 requests "all persons who examined, treated, counseled or prescribed medications to Plaintiff for anxiety between March 14, 2023 and April 11, 2023." (DN 25-2, at PageID # 179.)   In Plaintiff's supplemental answer, she states "she was examined, treated, counseled, or prescribed medications by Rennatta White, APRN between the dates of March 14 through April 11, 2023." (*Id*.)  In isolation, the Court may find this answer to be responsive, but Plaintiff also states that she "further directs Defendant to her Supplemental Document Production, produced concurrently with this answer." (*Id.*)   To the extent that Plaintiff's supplemental document production contains additional responsive information not included within her interrogatory response, the Court will instruct Plaintiff to either provide a complete response, refer to produced documents with specificity that sufficiently answer the interrogatory, or state in a supplemental response that she has already provided all responsive information.

### (f)    Supplemental RFP Nos. 2, 3, and 6

Defendant argues that Plaintiff's "Supplemental and Corrected" responses for Defendant's RFPs Nos. 2, 3, and 6 are similarly unresponsive, and the Court agrees.  For Plaintiff's responses to RFP Nos. 2, 3, and 6, Plaintiff states that she incorporates her prior responses to requests for production, and further "directs Defendant to her Supplemental Document Production, produced concurrently with this Supplemental Response." (DN 25-2.) The Court ordered Plaintiff to correct her prior responses to Defendant's requests for production with a label on each production

indicating which request each production is a response to.  (DN 20.)  The Court issued this order to prevent Plaintiff from producing documents in an unorganized dump and forcing Defendant to sift through the production to determine which documents were responsive.  While Plaintiff provided a corrected version of her May 23, 2024, responses, her "Supplemental and Corrected" responses remain similarly deficient.  This is a problem considering that her supplemental responses incorporate and supplement her prior responses.  Accordingly, the Court will order Plaintiff to similarly revise her supplemental responses to Defendant's RFP Nos. 2, 3, and 6 and provide a label on each supplemental production indicating which documents are responsive to which requests.

> **(2)    The Format of Plaintiff's Consolidated and Combined Supplemental and Corrected Discovery Responses, Objections, and Answers.**

Defendant takes issue with Plaintiff's decision to include her supplemental responses in one consolidated document rather than include them with her original responses.  Under Rule 26(e), a party who has responded to a request must timely supplement or correct his or her response if the party learns the response is materially incomplete or incorrect, and if the additional or corrective information is not known to the other parties during discovery.  FED. R. CIV. P. 26(e)(1)(A).  The Court is not aware of any authority, nor does Defendant cite to any, that states that these supplementations must be made in a specific format.  Defendant claims Plaintiff made litigation cumbersome by requiring Defendant to present two separate documents to Plaintiff to impeach her on the stand.  (DN 25, at PageID # 161.)  Defendant also states this will burden the Court's docket when it files two separate responsive pleadings as exhibits. (*Id.*)  The Court does not see how this would justify ordering Plaintiff to correct the format of her supplemental

responses.  Courts regularly receive multiple pages of exhibits to decide motions.  For instance, Defendant's Motion with its exhibits is 75 pages long.  (DN 25.)

Defendant previously asked the Court to order Plaintiff to revise the format of its supplemental responses, citing the cumbersome requirement that counsel use multiple documents to impeach Plaintiff.  (DN 20.)  The Court saw no reason to order Plaintiff to revise the format of her supplemental responses but invited Defendant to file a motion to compel if it so desired.  (DN 23.)  Upon reviewing Defendant's Motion to Compel (DN 25), the Court still sees no reason to order Plaintiff to revise the format of her supplemental responses.  The Court does not find that Defendant's task of "show[ing] Plaintiff her answers and responses to the initial interrogatory answers, paus[ing], and then show[ing] once again her interrogatory and responses as set forth in the separate consolidated pleading identified as 'Supplemental and Corrected' responses and answers" to impeach Plaintiff is so burdensome as to justify compelling Plaintiff to revise the format of her responses.  Defendant does not identify any authority to support Plaintiff's obligation to do so, nor does the Court find any.

> **b)** **Plaintiff's Corrected Responses to Defendant's First Set of Requests for Production of Documents**

> **(1)** **RFP No. 1**

Defendant requests information on Plaintiff's efforts to become employed after January 1, 2023.  (DN 25-3, at PageID # 188.)  Plaintiff objects to this request "as overly broad and burdensome, as it is unlikely to lead to the discovery of admissible evidence in this matter."  (DN 25-3, at PageID # 196.)  This objection is not well-taken.  Plaintiff cobbles together a hybrid objection based on what the Court perceives to be a relevance and an undue burden objection without supporting either.  First, the scope of relevance is not limited to information "likely" to lead to the discovery of admissible evidence.  The scope of relevance is any matter that bears on

or could reasonably lead to other matter that could bear on the claims or defenses of any party in a case. *Oppenheimer*, 437 U.S. at 351. Second, a party resisting discovery has a heavy burden to show that discovery would lead to a clearly defined and very serious injury. *Invesco*, 244 F.R.D. at 380. Plaintiff has not made such a showing.

The Court finds Plaintiff's other objections to be insufficient. Plaintiff objects on the basis that "there is no sanction for discovery requests in the form of 'contention requests for production of documents,' and parties are therefore required to state specifically what documents they want to inspect." (DN 25-3, at PageID # 188.) The Court does not see how the phrase "all documents that refer to, or relate to, Plaintiff's efforts to become employed on or after January 1, 2023" is a contention request for production. The request specifically states that Defendant is seeking documents that relate or refer to a specific material fact in this litigation. Defendant is not vaguely seeking documents that prove or disprove the Parties' claims. *Cf. Council on Am.-Islamic Rels. Action Network, Inc. v. Schlussel*, No. 11–CV–10061, 2012 WL 4513605, at *3 (E.D. Mich. Oct. 2, 2012) ("In these RFPs, Defendants ask Plaintiffs to provide documents that disprove Defendants' allegations without specifying what documents or things Defendants expect to receive."). Additionally, these are documents that are presumably in Plaintiff's exclusive possession and knowledge, and thus Defendant would likely not know what documents exist until Plaintiff produces such documents.

Moreover, Plaintiff's objection to the terms "relate to" and "refer to" as vague are equally insufficient. (DN 25-3, at PageID # 189.) All-encompassing demands that do not allow a reasonable person to ascertain what documents are required are certainly not sufficiently particular under Rule 34. *In re Asbestos Prods. Liab. Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009). And requests for documents that "relate to" or "refer to" broad subject matter can run afoul of this

requirement.  *See Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 650 (10th Cir. 2008) (holding that a request for "all documents…that refer to, mention or relate in any way to [p]laintiff, Whitlock, or the litigation or the allegations, facts and circumstances concerning the litigation" was overly broad and not reasonably particular).  But when such terms modify a specific event or subject matter in the litigation, the request does not become overly broad or insufficiently particular.  *Cardenas v. Dorel Juv. Grp., Inc.*, 230 F.R.D. 611, 623 (D. Kan. 2005).  Here, the terms 'relate to' and 'refer to' modify a specific subject matter in the litigation: Plaintiff's efforts to become employed on or after January 1, 2023.  Accordingly, the Court finds Defendant's request reasonably particular under Rule 34.

Additionally, Plaintiff states that she "declines to characterize documents beyond their contents, and she notes that the Defendants [*sic*] are represented by counsel and have access to their own attorneys' mental impressions."  (DN 25-3, at PageID # 189.)  This objection is illogical and frivolous.  In fact, the Court is not sure whether this is an objection at all.  The Court cannot tell from this objection whether Plaintiff is withholding documents, whether she is producing documents while refusing to relate them to any specific claim or defense in this matter, or something else entirely.  Either way, this is not a clear, specific, or valid objection.

Finally, Plaintiff makes two objections she also made in her interrogatory responses that the Court finds insufficient.  The Court does not see how a request for documents referring to Plaintiff's efforts to become employed in any way call for the "protected mental impressions of Plaintiff's attorneys."  Nor does the Court find Plaintiff's "equally available" objection persuasive.  *See Focuspoint Int'l, Inc. v. Baldeo*, No. 1:20-CV-2019, 2023 WL 2241310, at *5 (N.D. Ohio Feb. 6, 2023).  It appears that Plaintiff is cobbling together standard legal objections in a vague attempt to preserve any objection she can.  *See Al J. Schneider Co. v. Hartford Fire Ins. Co.*, No. 3:20-

CV-00863-BJB, 2021 WL 5702433, at *3 (W.D. Ky. Dec. 1, 2021). Such objections are ineffective. *Id.*

Even though Plaintiff objected to this request, she also responded. (DN 25-3, at PageID # 189.) It is unclear whether Plaintiff has produced every document responsive to this request or produced documents subject to her objections. Accordingly, the Court will order Plaintiff to produce every document responsive to Defendant's request, or in the case that she produced every document already, state in an additional supplemental response that she has done so.

### (2)    RFP No. 2

Defendant requests "Plaintiff's Federal and State tax returns for the time periods on or after December 31, 2022, including all earning statements, 1099's, W-2 statements, or any other documents relating to, or referring to income earned by Plaintiff during such time periods." (DN 25-3, at PageID # 189.) Plaintiff asserts that "Documents in Defendants' [*sic*] own document production may also be pertinent to the issue covered in this production request." (DN 25-3, at PageID # 190.) Not only is this a boilerplate response that Plaintiff repeats several times, but it is also not a justification for resisting discovery. *See Focuspoint Int'l, Inc. v. Baldeo*, No. 1:20-CV-2019, 2023 WL 2241310, at *5 (N.D. Ohio Feb. 6, 2023). The fact that Plaintiff labeled it a "response" and not an "objection" does not change that. Accordingly, the Court will order Plaintiff to produce every document responsive to Defendant's request, or in the case that she produced every document already, state in an additional supplemental response that she has done so.

### (3)    RFP No. 3

RFP No. 3 requests "all documents that Plaintiff sent to, or received from, the Equal Employment Opportunity Commission, Louisville, Kentucky Area Office, or Equal Employment Opportunity Commission including but not limited to, all documents received or downloaded by

Plaintiff from the Equal Employment Opportunity Commission's public portal."  (DN 25-3, at PageID # 190.)  Plaintiff makes the same illogical, frivolous, and vague objections that such a request seeks documents already in Defendant's possession, custody, or control, or that they call for the protected mental impressions of Plaintiff's attorneys.  The Court finds these objections insufficient and will order Plaintiff to produce every document responsive to Defendant's request, or in the case that she produced every document already, state in an additional supplemental response that she has done so.

### (4)     RFP No. 4

Under the Federal Rules of Civil Procedure, a party must produce documents as they are kept in the usual course of business or organize and label them to correspond to the categories in the request.  FED. R. CIV. P. 34(b)(2)(E)(i).  Courts have held that this applies not only to paper documents but to ESI as well.  *E.g.*, *Quality Mfg. Sys., Inc. v. R/X Automation Sols., Inc.*, No. 3:13-CV-00260, 2016 WL 1244697, at *6 (M.D. Tenn. Mar. 30, 2016).  This rule prevents parties from producing documents in an unorganized dump while commingling key documents with unrelated material.  Such a discovery tactic is unresponsive and improper under the Federal Rules.  *See Stooksbury v. Ross*, 528 F. App'x 547, 553 (6th Cir. 2013).

Here, Defendant has requested "all documents in Plaintiff's possession, custody, or control that relate to, or refer to, any illnesses or disabilities set forth in Plaintiff's Complaint, and which relate to, or refer to, any diagnosis, treatment, care, or prescribed medications for such illnesses or disabilities during the time period January 1, 2022 through December 31, 2023."  (DN 25-3, at PageID # 191.)  Instead of responding with just those documents, Plaintiff responded by stating that she has produced documents that "may be responsive to other requests at various points in this litigation," and that such documents "are or may be responsive to this Request."  (*Id.* at PageID #

191-92.)  Defendant asserts that, with some documents excepted, these documents are "almost every document [Plaintiff] produced in this dispute."  (DN 25, at PageID # 163.)  Defendant asserts that many of these documents have no relation to the information that Defendant requested, and that some of these documents are dated to as far back as 2019, outside the scope of the requested information.  (*Id*.)

Plaintiff does not dispute that her response to Defendant's request is voluminous.  (DN 29, at PageID # 247) ("As a result, Defendant can hardly complain that Plaintiff produced a large volume of documents in response to such an expansive request.").  Plaintiff also admits that she produced additional documents that were not requested.  (*Id*.) ("As such, Plaintiff needed to produce documents going further back in time than requested.").  Plaintiff asserts that Defendant's request merits such an expansive response because Plaintiff's complaint references 9 disabilities and illnesses.  (DN 29, at PageID # 247.)  These include: 1) Epstein-Barr Virus; 2) high anxiety; 3) degenerative disc disease; 4) chronic migraines; 5) chronic fatigue; 6) tiredness; 7) body pain; 8) COVID-19; and 9) Flu A.  (DN 29, at PageID # 247.)  Accordingly, Plaintiff asserts that a large volume of documents is an appropriate response to an expansive request.  (*Id*.)  Additionally, Plaintiff argues that she would be unable to introduce proof of her disabling conditions if Plaintiff only produced exactly what was requested.

The Court is hesitant to condone any party producing voluminous documents that are not responsive to a request, as such a practice could lead to unresponsive and improper document dumps.  Nor is the Court convinced that unless Plaintiff were to do so, she could not present that evidence at trial.  Accordingly, the Court will instruct Plaintiff to revise her response to reference only those documents that are responsive to Defendant's request within the time period requested.

### (5)    RFP No. 5

RFP No. 5 seeks "documents in Plaintiff's possession, custody, or control that relate to, or refer to, alleged 'humiliation, embarrassment, indignity, emotional distress and mental anguish' experienced by Plaintiff as set forth in Paragraph 82(c) of the Complaint." (DN 25-3, at PageID # 192.) Plaintiff again objects to this request as a contention request and as a request for the mental impressions of Plaintiff's counsel. As stated above, this is not a contention request for a production of documents, as it relates to a specific subject matter in the litigation, and accounts for the fact that such documents are only known to Plaintiff. *Cf. CAIR*, 2012 WL 4513605, at *3 ("Instead of clarifying what documents they are seeking, Defendants merely quote Plaintiffs' Complaint and expect Plaintiff to respond appropriately."). Nor does the Court see how this request could possibly be interpreted as a request for Plaintiff's counsel's mental impressions. Finally, it is not a valid objection that such documents are in the custody, control, or possession of Defendant.

Plaintiff also makes the same vague objection that the request is "overly broad and burdensome, as it is unlikely to lead to the discovery of admissible evidence in this matter." (DN 25-3, at PageID # 192.) As discussed regarding her objections to RFP No. 1, this objection is not well-taken. Nor does the Court find her objection that such documents are vague because they contain the terms "relate to" and "refer to" valid. (*Id.*) Accordingly, the Court will order Plaintiff to produce every document responsive to Defendant's request, or in the case that she produced every document already, state in an additional supplemental response that she has done so.

### (6)    RFP No. 6

RFP No. 6 requests documents that include communications concerning Plaintiff's disabilities and childcare duties as well as her assertion that her treatment at work made her feel discriminated against. (DN 25-3, at PageID # 193.) Plaintiff objects to the request as seeking documents already in the control of Defendant or non-parties and Plaintiff's counsel's mental

impressions.  The former objection is not a valid objection, and the latter is nonsense.  The request only seeks communications between Plaintiff and 'any person who worked within or under the Human Resources Department of Defendant's Elizabethtown, Kentucky facility." (*Id.*)  Unless Plaintiff's attorneys also worked in the Human Resources Department of Defendant's Elizabethtown facility, the Court does not see how this request could seek any of Plaintiff's attorneys' mental impressions or work product.  Accordingly, the Court will order Plaintiff to produce every document responsive to Defendant's request, or in the case that she produced every document already, state in an additional supplemental response that she has done so.

### (7)    RFP Nos. 7, 8

As for RFPs No. 7 and 8, Plaintiff responds that she does not have any responsive documents in her possession.  Plaintiff cannot produce documents that are not within her possession, custody, or control.  FED. R. CIV. P. 34(a)(1) ("A party may serve on any other party a request within the scope of Rule 26(b)…to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items *in the responding party's possession, custody, or control*.") (emphasis added).  Defendant does not credibly assert that Plaintiff does in fact have these documents.  Accordingly, the Court finds Plaintiff's responses to RFPs No. 7 and 8 sufficient.

### (8)    RFP No. 9

Defendant requests "all documents in Plaintiff's possession, custody, or control that relate to, or refer to, any disability related absence incurred by Plaintiff during her employment with Defendant."  (DN 25-3, at PageID # 196.)  Plaintiff objects to the request on the basis that contention requests for production of documents are not permitted; that the request is overly broad and burdensome as it is unlikely to lead to the discovery of admissible evidence in this matter; that

the terms "relate to" and "refer to" render the request vague and ambiguous; that the request seeks documents already in the control of Defendant and non-parties; and that it calls for Plaintiff's counsel's mental impressions. (*Id.*) Again, these objections are not well-taken. Accordingly, the Court will order Plaintiff to produce every document responsive to Defendant's request, or in the case that she has produced every document already, advise Defendant she has done so.

### (9)    RFP No. 10

Defendant requests "all documents…that relate to, or refer to, childcare duties of Plaintiff while employed by Hendrickson, that caused or contributed to Plaintiff being absent from work, arriving to work after 6:30 a.m. or departing from work before 3:30 p.m." (DN 25-3, at PageID # 197.) Plaintiff makes all the same objections as before: it's a contention request; it's overly broad because it is unlikely to lead to the discovery of admissible evidence in this matter; the terms "relate to" and "refer to" render the request ambiguous; it requests documents already in the possession, custody, or control of Defendant and non-parties; it calls for Plaintiff's counsel's mental impressions. (*Id.*) Again, these objections are not well-taken. Accordingly, the Court will order Plaintiff to produce every document responsive to Defendant's request, or in the case that she has produced every document already, advise Defendant she has done so.

### (10)    RFP No. 11

Defendant requests "all documents…that relate to, or refer to days that Plaintiff's husband worked at the location of his employer, during the time period March 13, 2023 through March 29, 2023." (DN 25-3, PageID # 198.) While Plaintiff repeats several objections that the Court does not find sufficient, Plaintiff also objects to this request as prohibited from disclosure under applicable law. (*Id.* at PageID # 199.) Therefore, the Court will first consider whether the requested information is relevant before determining the sufficiency of the objection.

Plaintiff asserts in her complaint that her daughter tested positive for strep throat on March 13th, 2023. (DN 1-1, at PageID # 9, ¶ 26.) Plaintiff further asserts her husband was able to take care of their daughter on the 13th, but not the 14th. (*Id.*) Plaintiff also asserts that she was forced to take a vacation day to take care of her daughter while her husband worked, even though her coworkers were able to utilize work-from-home when necessary. (*Id.* at ¶ 28.) Accordingly, the Court understands why such a request is relevant for the dates of March 13, 2023 – March 14, 2023. But the Court does not see how this information is relevant beyond those dates. Accordingly, the Court finds that the request seeks relevant information only for the dates of March 13, 2023, and March 14, 2023.

Plaintiff responds that she cannot produce documents responsive to such a request because the request seeks documents Plaintiff is prohibited from disclosing under applicable law. (DN 25-3, at PageID # 199.) To be sure, courts will not order production of documents if a party is prohibited from doing so under federal law. *E.g., Bentley v. Highlands Hosp. Corp.*, No. 7:15-CV-97-ART-EBA, 2016 WL 762686, at *11 (E.D. Ky. Feb. 23, 2016). But that does not relieve Plaintiff of her obligation to "state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). Plaintiff only states she "objects to this Request as seeking documents that Plaintiff is prohibited from disclosing under applicable law (e.g., OPSEC)." (DN 25-3, at PageID # 199.) Plaintiff does not cite to any law in her objections, nor does she cite to any law in her response brief. Without a citation to the applicable law, neither the Court nor Defendant can evaluate Plaintiff's claim that such information is confidential under applicable law. *Cf. Bentley*, 2016 WL 762686, at *11 ("Upon review of the provisions in § 60.20, the Court is persuaded by HRMC that the hospital 'is expressly prohibited from disclosing the information Plaintiff seeks,' and 'no exception would permit [HRMC] to do so, without exposing

itself to significant monetary penalties.'"").  Accordingly, the Court finds Plaintiff's response to RFP No. 11 to be insufficient.  However, out of an abundance of caution, the Court will not yet order Plaintiff to produce documents responsive to RFP No. 11.  Instead, the Court will order Plaintiff to revise her objections to cite to the law prohibiting disclosure or, in the absence of any applicable law, produce the requested documents.  If Plaintiff supplements her response with applicable law and does not produce the requested documents, Defendant may file an additional motion to compel with respect to this request.

### (11)    RFP No. 12

RFP No. 12 requests "all photographs, digital images, emails, instant messages, texts or other documents sent to, or received by Plaintiff on or after 4:00 p.m. EST on March 15, 2023, through 6:00 a.m. EST on March 20, 2023."  (DN 25-3, at PageID # 199.)  Plaintiff objects to this request as irrelevant, overly broad, unduly burdensome, beyond the scope of pertinent communications, seeking information already possessed by Defendant, and privileged.  (DN 25-3, at PageID # 200.)

### (a)    Relevance

The requested information is certainly relevant.  In an email sent from Plaintiff to her supervisor, Stephanie Mayfield, she writes that "the actions taken following my disclosure of disabilities have made me feel discriminated against.  This situation has increased my anxiety more than I have ever experienced."  (DN 1-1, at PageID # 11, ¶ 42.)  Plaintiff is requesting relief for "humiliation, embarrassment, personal indignity, apprehension about her past, current and future economic well-being, emotional distress, and mental anguish."  (*Id.* at PageID # 16-17.)  Such damages are available for both Title VII and the Americans with Disabilities Act.  *See West v. Tyson Foods, Inc.*, 374 F. App'x 624, 642-43 (6th Cir. 2010) (approving $750,000 in compensatory

damages under Title VII); *Knight v. Metro. Gov't of Nashville & Davidson Cnty.*, Tenn., 136 F. App'x 755, 762 (6th Cir. 2005) (approving a $150,000 award for emotional damages sustained because of violations of the Americans with Disabilities Act). Accordingly, information that would bear on Plaintiff's emotional state because of her alleged discrimination would be relevant to Plaintiff's claim for damages.

### (b)    Scope of the Request

Plaintiff objects to RFP No. 12 based on her assertion that "Defendant has not limited the scope of this request to only cover those communications that are pertinent to Plaintiff's employment relationship with Defendant, and as such, Defendant has demonstrated no right to inspect the full scope of Plaintiff's communications, regardless of contents and recipient." (DN 25-3, at PageID # 200.) As a result, Plaintiff "decline[d] to provide documents that exceed her obligation under the Rules of Discovery." (*Id.*)

The rules governing discovery should be construed broadly because discovery should help clarify the issues. *Oppenheimer*, 437 U.S. at 351. But the Court still has a duty to limit the frequency or extent of discovery within the scope of Rule 26(b)(1). FED. R. CIV. P. 26(b)(2)(C)(iii). As such, the Court should balance the Parties' need for discovery against the need to prevent "fishing expeditions." *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998).

Here, the Court finds that Defendant's request is overly broad. Defendant's request covers "all photographs, digital images, emails, instant messages, texts or other documents sent to, or received by Plaintiff on or after 4:00 p.m. EST on March 15, 2023, through 6:00 a.m. EST on March 20, 2023." (DN 25-3, at PageID # 199.) This would include *every* communication Plaintiff sent or received, from simple instructions to members of her family for grocery shopping to news articles shared among friends. The Court does not see how every bit of communication would be

relevant to this matter, nor is the Court convinced that Defendant's argument that "photographs or digital images of Plaintiff engaging in activities atypical of one inflicted with insufferable anxiety" justifies such an expansive request.  (DN 32, at PageID # 282.)  Individuals with anxiety can engage in activities other than experiencing anxiety.

However, the Court does not find Plaintiff's self-imposed limit on her document production justified.  Plaintiff objects to the request based on the fact Defendant "has not limited the scope of this Request to cover those communications that are pertinent to Plaintiff's employment relationship with Defendant."  (DN 25-3, at PageID # 200.)  But the request would also seek communications relating to Plaintiff's experience with anxiety that have nothing to do with her employment relationship with Defendant.  Accordingly, the Court finds the appropriate scope of the request should include only those communications that refer to her experience with anxiety, or her employment relationship with Defendant, or both.  Every other communication relating to other subject matter is outside the scope of discovery and accordingly the Court will not order Plaintiff to produce such communications.  Therefore, the Court will instruct Plaintiff to produce those communications within the relevant timeframe that relate to either her experience with anxiety, or her employment relationship with Defendant, or both.

### (c)    Spousal Privilege

Under the Federal Rules of Evidence, the common law governs a claim of privilege.  FED. R. EVID. 504.  Courts must interpret the common law considering reason and experience.  *Id*.  The marital communications privilege protects confidential communications made by one spouse to another during the marriage, and this privilege is assertable by either spouse.  *United States v. Porter*, 986 F.2d 1014, 1018 (6th Cir. 1993).  This privilege only applies to: (1) utterances or expressions intended by one spouse to convey a message to the other (2) during a marriage

recognized as valid by state law (3) that was made in confidence. *Id.* This privilege applies not only to pure communications, but to conduct intended to convey a message. *United States v. Robinson*, 763 F.2d 778, 783 (6th Cir. 1985). Courts generally hold that a spouse seeking to invoke this privilege has waived it only if that spouse has intentionally disclosed the content of the confidential communications. *E.g.*, *United States v. Bahe*, 128 F.3d 1440, 1443 (10th Cir. 1997). While this privilege has generally applied to criminal proceedings, courts within the Sixth Circuit have applied it to civil proceedings as well. *See Jones-McNamara v. Holzer Health Sys.*, No. 2:13–cv–616, 2014 WL 4805412, at *2 (S.D. Ohio Sept. 26, 2014).

Here, Plaintiff asserts that Defendant's Request for Production No. 12 requests privileged information. (DN 29, at PageID # 249.) In Plaintiff's response brief, she explains that the privileged information includes messages between herself and her husband where they are the only ones in the thread. (*Id.*) Defendant asserts that Plaintiff's husband waived the marital communications privilege by testifying to "conversation after conversation" with his spouse. (DN 32, at PageID # 282.) Defendant cites to *United States v. Premises Known as 281 Syosset Woodbury Rd., Woodbury, N.Y.* to argue that Plaintiff cannot invoke the marital communications privilege because her husband had already waived the privilege. 71 F.3d 1067, 1072 (2d Cir. 1995).

Even if Plaintiff's husband waived the privilege, he could only do so with respect to himself. In *Syosset*, the court held that a witness who previously testified about the contents of certain confidential marital communications could not enjoy the same privilege to protect other communications, lest the court be confronted with a "significant danger of distortion." 71 F.3d at 1072. This does not mean that the witness could waive the privilege for his or her spouse. In fact, courts have held that a spouse may only waive the privilege with respect to his or herself. *E.g.*,

*Bahe*, 128 F.3d at 1443 ("[A] waiver requires an intentional disclosure of the content of the confidential communication *by the party seeking to invoke the privilege*.") (emphasis added). Thus, this privilege is not waived. Accordingly, the Court will instruct Plaintiff to produce all communications that relate to her employment relationship with Defendant or her experience with anxiety within the requested time frame, excepting those communications solely between herself and her husband.

### c)    Reasonable expenses

Under Rule 37, if a court grants a motion to compel in part, then a court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion. FED. R. CIV. P. 37(a)(5)(C). When parties have taken legitimate positions, and a court grants a motion to compel in part, then courts generally conclude justice requires each party be held responsible for their own fees and costs. *Benavidez v. Sandia Nat'l Lab'ys*, 319 F.R.D. 696, 720 (D.N.M. 2017).

The Court would undoubtedly be within its discretion to sanction Plaintiff for her conduct in discovery in this matter. Plaintiff's objections to Defendant's RFPs were at times confusing, frivolous, nonsensical, vague, or boilerplate. For instance, the Court does not see how a request for communications between Plaintiff and any person who worked in the Human Resources Department of Defendant's Elizabethtown facility in any way implicates Plaintiff's counsel's mental impressions. (DN 25-3, at PageID # 193-94.) Nor does the Court see how the phrase "Plaintiff declines to characterize documents beyond their contents, and she notes that the Defendants [*sic*] are represented by counsel and have access to their own attorneys' mental impressions" constitutes a remotely recognizable objection. The fact that these objections are repeated several times throughout Plaintiff's responses leads the Court to believe that Plaintiff

cobbled together every possible standard objection without assessing whether they truly applied. This is not an acceptable way to participate in discovery.

Moreover, the Court notes that the Parties in this matter have a history of inability to cooperate in discovery effectively. During the October 2, 2024, status conference, the Court expressed its concern that the Parties had chosen to involve the Court in settling their discovery disputes before any attempt to resolve such disputes without judicial involvement. The Court also finds, based on the substance of both Motions, that the Parties are still struggling to cooperate in discovery. The fact that Defendant appears uncertain as to whether Plaintiff has produced all responsive documents despite her assertion that she has done so is evidence that the Parties are not cooperating or are at least not communicating adequately. Additionally, the Court understands that it is common for parties to dispute the substance of discovery requests and responses, but the Court is troubled that the Parties are quibbling over the *format* of discovery responses despite providing no authority for their positions on the issue. *See Fresenius Med. Care Holdings, Inc. v. Roxane Lab'ys, Inc*, No. 205-CV-0889, 2007 WL 764302, at *3 (S.D. Ohio Mar. 9, 2007), at *3 ("The fact that the parties in this case were unable to reach such a resolution is, taken together with the extensive amount of motions practice devoted to discovery, a strong indicator that they have lost sight of the goal of resolving discovery disputes reasonably and without intervention of the Court and have chosen instead to litigate every issue, no matter how minor, with a view toward increasing the cost and expense of litigation rather than streamlining its resolution."). The Court will not order an award of reasonable expenses incurred in relation to these Motions, but the Court takes the opportunity now to warn the Parties that continued willful, bad faith refusal to cooperate in discovery that prejudices the other Party, increases the cost of litigation, and obstructs the swift resolution of this matter, may result in an award of fees assessed against them.

## 2.    Defendant's Second Motion to Compel

Defendant's Second Motion to Compel (DN 35) concerns Defendant's request to conduct an additional deposition of Plaintiff following the production of additional documents as well as Defendant's request for Plaintiff's cell phone.

### a)    Second Deposition of Plaintiff

The Motion is titled as a Motion to Extend Non-Expert Discovery Deadline.  (DN 35.)  But Defendant asserts that it wants the Court to "allow Defendant to re-open the deposition of Plaintiff to inquire about documents."  (DN 35, at PageID # 381.)  Parties may not depose anyone more than once without leave of Court.  FED. R. CIV. P. 30(a)(2)(A)(ii).  Thus, the Court will decide whether to grant Defendant leave to conduct an additional deposition of Plaintiff before it extends the discovery deadlines.

Under Rule 30, a party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2) if a party seeks to depose someone that has already been deposed in the case.  FED. R. CIV. P. 30(a)(2)(A)(ii).  Courts typically grant leave for a successive deposition only for good cause or to prevent undue prejudice.  *E.g., Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 344 F.R.D. 207, 227-28 (D.N.J. 2023).  Rule 26(b)(2) requires courts to consider whether the second deposition would be unnecessarily cumulative, whether the party requesting the deposition has had other opportunities to obtain the same information, and whether the burden of a second deposition outweighs its potential benefit.  FED. R. CIV. P. 26(b)(2).

Normally, when a party decides to conduct a deposition before it has received all relevant information, it assumes the risk that a deposition is premature.  *See Nellcor Puritan Bennett LLC v. CAS Med. Sys., Inc.*, No. 2:11-CV-15697, 2013 WL 3242960, at *3 (E.D. Mich. June 26, 2013).  A party will ordinarily be unable to show good cause to conduct a second deposition if the

information was available to the party and the party did not ask for it early enough to use at the first deposition. *See Thoma v. City of Spokane in & for Washington*, 696 F. App'x 197, 199 (9th Cir. 2017). But courts generally allow re-deposition when new information that could not have been anticipated is unearthed after the initial deposition. *Le v. Diligence, Inc.*, 312 F.R.D. 245, 246 (D. Mass. 2015).

In *Eaton Corp. v. Weeks*, the court held that a second deposition of two deponents was appropriate because the plaintiff was in control of the production of the documents in question and did not indicate to the defendant that it should delay the depositions until after the plaintiff produced the documents. No. 13–12392, 2014 WL 700466, at *4 (E.D. Mich. Feb. 24, 2014). The plaintiff produced 2,000 documents the day before one of the depositions, leaving the defendant with insufficient time to prepare to use them for the deposition. *Id*. After the depositions, the plaintiff produced additional documents that were relevant to the subject matter of the deposition. *Id*. Moreover, the parties prematurely conducted the depositions to meet the discovery cut-off date, not for any improper purpose. *Id*. The court thus found the balance of equities to favor an additional deposition. *Id*.

In *Fresenius*, the court held that the plaintiff's good faith efforts to obtain crucial documents coupled with defendant's failure to cooperate in discovery justified a second deposition. 2007 WL 764302, at *2. The plaintiff served document requests that specifically called for relevant documents that defendant did not produce, identify, or explicitly withhold. *Id*. The defendant offered no justification for failing to provide the documents, nor did it dispute that the plaintiff learned about the documents for the first time at the deposition. *Id*. The relevant documents were also crucial to the matter. *Id*. at *3 ("Any competent lawyer who was aware of the existence of the provisional patent application would have insisted upon its production prior to

taking Ms. Economou's deposition."). The court thus held the importance of the documents outweighed any burden on the defendant in conducting an additional deposition. *Id.* at *4.

But a court may deny a second deposition even if relevant documents were produced after the first deposition. *See Nellcor*, 2013 WL 3242960, at *3. In *Nellcor*, the court found that the plaintiff assumed the risk of conducting a deposition before it had all the necessary information. *Id.* The plaintiff knew that more information could be discovered but chose not to leave the deposition open pending the resolution of the discovery dispute. *Id.* Accordingly, the court held that a second deposition was not appropriate. *Id.*

Here, Defendant deposed Plaintiff on July 22, 2024. (DN 35-3.) During the deposition, Defendant's counsel asked Plaintiff about her decision to text employees regarding the onboarding process rather than call them. (*Id.* at PageID # 431.) Plaintiff asserted that she texted employees because it was within her discretion, and she chose to do so based on feedback from employees. (*Id.* at PageID # 432.) Defendant's counsel then asked Plaintiff a series of questions regarding all the things that Plaintiff was supposed to tell new employees. (*Id.* at PageID # 432-34.) Defendant's counsel asked Plaintiff about the term "touch base." (*Id.* at PageID # 435.) Plaintiff told Defendant's counsel that "touch base" referred to the process of onboarding new employees and that she conducted this process through texting, but her supervisor told her to change that process to calling, rather than texting. (*Id.*)

On September 24, 2024, Defendant requested "all documents that refer to, or relate to any and all communications…concerning, relating or constituting 'touch-base' communications from November 14, 2022 through April 11, 2023." Counsel for Plaintiff asserts they misunderstood the request, and upon realizing their mistake after the December 9, 2024, conference, produced the

text message threads between Plaintiff and several new employees of Defendant. (DN 36, at PageID # 613.)

The Court finds that the balance of equities does not favor a second deposition. Certainly, the content of the documents is relevant to the criticisms leveled against Plaintiff that led to her constructive discharge. (DN 35, at PageID # 385-86.) But the fact that Plaintiff texted new hires is not new information that came to light "triggering questions that the discovering party would not have thought to ask at the first deposition." *Keck v. Union Bank of Switzerland*, No. 94CIV.4912(AGS)(JCF), 1997 WL 411931, at *1 (S.D.N.Y. July 22, 1997). In fact, counsel for Defendant raised the issue first in the deposition. (DN 35-3, at PageID # 431) ("So that's one area where you – once it was given to you by Ms. Mayfield, you made a change. And I think if I understand it correctly, you went to strictly texting, right?"). Moreover, Plaintiff testified in her deposition that her discretion in the touch base process was taken away by Defendant. (DN 35-3, at PageID # 431.) If Defendant made this change, Defendant necessarily would have known about this, and Defendant's counsel should have known to request the documents. The Court does not understand why Defendant could not have made this request before the deposition, nor does the Court see how an additional deposition could provide Defendant with any more information. Accordingly, the Court will not permit Defendant to conduct an additional deposition of Plaintiff. Nevertheless, as the Court is also ordering Plaintiff to produce additional documents, the Court understands that an additional deposition could become necessary after production of these documents. Thus, the Court is denying this request without prejudice.

  **b)**  **Production of Plaintiff's Cell Phone**

Under Rule 34, a party may serve on any other party a request within the scope of Rule 26(b) to produce and permit the requesting party or its representative to inspect, copy, test, or

sample any designated tangible things in the responding party's possession, custody, or control. FED. R. CIV. P. 34(a)(1)(B). But this rule is not meant to create a routine right of direct access to a party's electronic information system, even if such access might be justified in some circumstances. FED. R. CIV. P. 34(a) advisory committee's note to 2006 Amendment. Accordingly, courts should be cautious about ordering unduly intrusive inspections or tests. *Id*. With regards to forensic imaging, the Sixth Circuit has held that a district court's order to compel forensic imagining may constitute an abuse of the court's discretion. *See John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008). Forensic imagining is not uncommon during civil discovery. *Id.* However, *compelled* forensic imaging is not appropriate in all cases. *Id.* at 460. The interest justifying compelled forensic imaging must be significant enough to override the risk of improperly exposing confidential or private personal information wholly unrelated to the case. *Id.* Mere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic electronic discovery measures.

### (1)    Relevance

First, the Court must address the threshold issue as to whether Plaintiff's cell phone is relevant. Defendant alleges that production of Plaintiff's cell phone is relevant to her location during her employment. (DN 35, at PageID # 387.) Defendant argues that this bears on Plaintiff's claim that she faced a retaliatory action in the form of criticism for her tardiness. (*Id*.) Defendant also argues that this bears on Plaintiff's claim that she faced discrimination as a woman with a young child and as a woman with a disability because Plaintiff alleges that, to the extent she was late for work, such was caused by the care and treatment of her daughter as well as her own medical ailments. (*Id*.) Defendant also speculates that if Plaintiff were "visiting stores, or bars, or other

venues on days she claimed to be too ill to work," then evidence of Plaintiff's location would bear on her claim of disability. (*Id.*)

Defendant also alleges that such information data is relevant to Plaintiff's allegation that "on all of the days that she was tardy for work, she stayed after her regular shift end time of 3:30 p.m. in order to compensate for her tardiness." (DN 35, at PageID # 389.) Defendant argues that the location artifacts residing on her iPhone will be "instrumental in challenging and exposing" those claims. (*Id.*)

Defendant argues that if this matter reaches trial, Plaintiff is "poised to testify at trial either that she was not absent or late, or alternatively that even if she was absent, late, or left early, she made up for those missed hours of work by staying later than her 3:30 p.m. normal working hours." (DN 37, at PageID # 660.) Plaintiff claimed that the notice of concern she was issued by her employer constituted a discrete act of discrimination "laden with inaccurate and unfair criticisms of her work performance." (*Id.*) Defendant thus argues that the location artifacts from Plaintiff's iPhone will bear on the accuracy of the criticisms leveled at her in the notice of concern, and by extension, her claim of discrimination. (*Id.*)

Plaintiff argues that these location artifacts would have no bearing on Plaintiff's disabling conditions, her parental responsibilities, or whether she engaged in a protected activity. (DN 36, at PageID # 615.) Defendant responds by pointing out that Plaintiff was issued a notice of concern as an adverse employment action. (DN 37, at PageID # 660.) The notice of concern listed Plaintiff's "repetitive workplace absenteeism, tardiness, and early departures" as a concern. (*Id.*) Defendant concludes by stating that the location artifacts on Plaintiff's iPhone will document whether Plaintiff was indeed absent, late, or had gone early on some days she worked.

Considering these arguments, the Court finds Plaintiff's location data relevant to Defendant's defense against Plaintiff's claim of discrimination.  A plaintiff may prove discrimination and retaliation through circumstantial evidence if he or she carries his or her burden of establishing a prima facie case of discrimination or retaliation.  *George v. Youngstown State Univ.*, 966 F.3d 446, 459 (6th Cir. 2020) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-07 (1973)).  Once the plaintiff has carried his or her burden, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for his or her actions.  *Id.*  But even if the defendant can articulate a non-discriminatory reason, the plaintiff can still win by demonstrating that the defendant's proffered reason was merely a pretext for discrimination.  *Id.* Here, Plaintiff's complaint alleges that she received a notice of concerns that listed work hours, requirements of staying in late, coming in early, and working weekends.  (DN 1-1, at PageID # 10, ¶¶ 34,35.)  Plaintiff was also told she had to work one weekend a month and to work late and come in early.  (*Id.* at PageID # 11, ¶46.)  Plaintiff also alleges that she was "left out of meetings and HR decisions that she had previously been seen as integral in assisting … her job duties began to become secretarial instead of HR."  (*Id.* at PageID # 12, ¶ 50.)  If Plaintiff had been absent from work, left early, or arrived late for reasons other than her childcare duties or her disabilities, then such conduct would provide a nondiscriminatory basis for taking an adverse action against her.  Thus, Plaintiff's location data is relevant to whether Defendant's concerns about her attendance were non-discriminatory.

Moreover, the KCRA defines a disability as "(a) A physical or mental impairment that substantially limits one (1) or more of the major life activities of the individual; (b) A record of such an impairment; or (c) Being regarded as having such an impairment."  KY. REV. STAT. ANN. § 344.010(4)(c) (West).  While it is true that the KCRA was modeled after the ADA, the ADA

was later amended to broaden the definition of a disability. *Grainger v. Hoskin & Muir, Inc.*, No. 3:19-CV-00347-GNS, 2019 WL 6684524, at *2 (W.D. Ky. Dec. 6, 2019). Kentucky courts thus interpret the KCRA based on the former version of the ADA. *Larison v. Home of the Innocents*, 551 S.W.3d 36, 43 (Ky. Ct. App. 2018). Under the pre-2008 Amendments version of the ADA, an individual must have an impairment that "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002). The Court thus finds that Plaintiff's location data is relevant to her claim under the KCRA because Plaintiff's activities outside of work bear on whether her alleged disabilities severely restrict her from doing activities that are of central importance to daily life. Accordingly, the Court finds that production of Plaintiff's cell phone is likely to lead to the discovery of admissible evidence.

### (2)    Undue Intrusion

If Defendant wants the Court to order Plaintiff to produce her cell phone, then Defendant must do more than show that information obtained from her cell phone is relevant. The interest Defendant has in obtaining Plaintiff's cell phone must be significant enough to override the risk of improperly exposing unrelated, private, and personal information. *John B.*, 531 F.3d at 460.

Plaintiff argues that Defendant's request is "as broad as possible, and is thus maximally invasive." (DN 36, at PageID # 620.) For Defendant to extract the narrow set of data that it wants, Plaintiff would still need to produce the entire contents of her phone to ArcherHall, a third-party entity that she does not know, has never met, and never chose to engage during this case. (*Id.* at PageID # 621.)

Plaintiff further argues that the proposed protective order is inadequate to protect her privacy interests in three areas: methodology, loaner phone functions, and loaner phone data.

AcherHall would retain the full forensic image of Plaintiff's phone, and Plaintiff would have no right to command ArcherHall to delete her personal data at any point in time. This would indubitably risk improper exposure of Plaintiff's personal and private information. *John B*, 531 F.3d at 457.

Plaintiff argues that Defendant's proposal creates "an illusory choice between protecting her own privacy and maintaining the benefits of modern cell phone technology." (DN 36, at PageID # 625.) That is because Plaintiff's accounts, communications, and information will be routed through the loaner phone that Defendant has offered to Plaintiff. (*Id*.) Thus, Plaintiff will be forced to risk improper exposure of her personal information by using the loaner phone if she needed to use a cell phone at all during this time. (*Id*.) Given that Plaintiff is a parent of a young child, foregoing the use of a cell phone for even a single day is not an option for her. (*Id*.)

The Court finds that Plaintiff's privacy concerns are valid. Defendant's response and proposed protective order have not ameliorated these privacy concerns. Once Plaintiff has delivered her phone to ArcherHall, "a full file system forensic image will be made of the phone. A full file system forensic image *is the most extensive forensic image* that can be made of a cell phone." (DN 35-5 at ¶ 12) (emphasis added). Greg Kelley of ArcherHall assures the Court that ArcherHall has worked under protective orders before and has never violated such an order. (DN 35-5 at ¶ 9.) This is far from a guarantee that Plaintiff's privacy rights will not be violated in this case, even inadvertently. The Court finds that the privacy concerns implicated by a full scan of Plaintiff's cell phone are so great the Defendant should have a compelling justification for the Court to grant its motion regardless as to whether ArcherHall is operating under a protective order.

### (3)    Justification

For the Court to compel Plaintiff to produce her cell phone for forensic scanning, such interests must be "premised on an interest significant enough to override" the risk of improper exposure. *John B.*, 531 F.3d at 460. Mere skepticism that an opposing party has not produced all relevant information is not enough. *Id*.

None of the cases cited by Defendant convince the Court that there is a substantial justification for ordering Plaintiff to produce her cell phone. *Pogue v. Nw. Mut. Life Ins. Co.* confronted the issue as to whether Plaintiff's assertion that he had produced his entire SSA file was enough to satisfy Northwestern Mutual's request that Pogue produce his entire Social Security file. No. 3:14-CV-598-CRS-CHL, 2016 WL 2731497, at *5 (W.D. Ky. May 6, 2016). The Court cited an opinion from the Northern District of Indiana noting "the practice of obtaining written consents for the release of records represents the least expensive and most efficient means of procuring information from medical or counseling providers." *Id*. (citing *Smith v. Logansport Cmty. Sch. Corp.*, 139 F.R.D. 637, 649 (N.D. Ind. 1991). The Court further noted that the case before it was "even less complicated than the situation described in the excerpt above." *Id*. Even then, the Court did not confront the privacy concerns that the Court is now confronting.

In *Johnson v. Midland Credit Mgmt. Inc.*, the court permitted the plaintiff to examine the defendant's database stored on its computer for the purpose of determining other members of plaintiff's proposed class. No. 1:05 CV 1094, 2009 WL 10723012, at *3 (N.D. Ohio Feb. 9, 2009). The court had granted partial summary judgment in favor of plaintiff, finding that defendant violated the FDCPA by failing to send a debt validation letter to the plaintiff's correct address. *Id*. at *1. The court distinguished the case before it from other cases where the party seeking discovery did so based on "mere suspicion" or "based solely on the nature of the claims asserted" by noting the court already determined that defendant violated its obligation under the FDCPA, and there

was a substantial likelihood the computer system sought would contain information that could allow plaintiff to establish other class members. *Id.* at *3.

In *Casasola v. Control Sys. Int'l, Inc.*, the court stressed all the measures it took to facilitate discovery and correct discovery misconduct before resorting to forensic imaging. No. 22-2505-JWB, 2024 WL 2938829, at *9 (D. Kan. June 11, 2024). First, defendants initially asserted the owner of the cell phone at issue did not use text messages for work purposes, and that they had searched for responsive texts but found none. *Id.* The court then ordered defendants to find and produce responsive messages. *Id.* But negotiations over the search continued until the following month when the court ordered defendants to produce the cell phone for imaging. *Id.* The parties continued to argue over who would control the flow of discovery from the phone and the plaintiff's ability to review the discovery. *Id.* Even after three additional discovery conferences, the court discovered that defense counsel was still inhibiting discovery. *Id.* After repeated attempts at facilitating discovery, the court ordered defendants to produce the subject cell phone. *Id.*

In *Burghardt v. Ryan*, the court ordered the plaintiff to produce his cell phone because it "may be the only source of insight into his mental state leading up to the shooting and his actions during the encounter with the police." No. 5:19-CV-325, 2020 WL 4350049, at *4 (N.D. Ohio July 29, 2020). The court noted plaintiff may not be able to be deposed on these topics, or otherwise provide competent evidence on the relevant events in the case. *Id.*

Here, Defendant has not convinced the Court that Plaintiff's cell phone location data is the only source of relevant information. The Court acknowledges that Defendant has tried to obtain relevant information before. (DN 35, at PageID # 388-89) ("Defendant attempted to obtain data points for Plaintiff's arrivals and departures to her work at Hendrickson through day-care sign-in and sign-out records relating to Plaintiff's young daughter, but those records only memorialized

arrival and departure times, not *who* dropped off or picked up Plaintiff's daughter."). The Court also acknowledges that such information is relevant. (*Id*. at PageID # 389) ("Plaintiff is prepared to testify at trial that on all of the days that she was tardy for work, she stayed after her regular shift end time of 3:30 p.m. in order to compensate for her tardiness."). But the Court does not see how Plaintiff's location data is the *only* source of information bearing on this matter. Plaintiff was issued a notice of concern that listed her repetitive absenteeism, tardiness, and early departures. (DN 37, at PageID # 660.) If these concerns were truly non-discriminatory, and not a pretextual post-hoc justification, then surely Defendant should have some evidence of its own that justified these concerns, even if Plaintiff did not have a timesheet. *See Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 513 (6th Cir. 2021) ("The post-hoc nature of the justifications contained in Stidham's affidavit further support an inference of pretext."). Finally, the Court does not see how Plaintiff's location artifacts are the only source of information on her disability when Defendant could depose Plaintiff's care providers or examine her medical records instead.

The rest of the cases Defendant cites lend little support to its request. In *Corum v. Wensley*, the court *denied* the plaintiff's request to forensically examine the defendant's cell phone, holding that there were alternative methods of discovery that were "appropriate and less intrusive." No. 3:22-CV-241-DCLC-DCP, 2023 WL 6192728, at *4 (E.D. Tenn. July 19, 2023). In *Blount v. Stanley Engineering Fastening*, the Court imposed sanctions on the plaintiff's attorney for frustrating deposition questions *relating to* the plaintiff's cell phone. No. 5:19-CV-109-BJB, 2022 WL 135918, at *3 (W.D. Ky. Jan. 14, 2022). In *Do v. Arizona State Univ.*, the court addressed the issue of reopening discovery after the plaintiff improperly frustrated the parties' discovery and did not address whether the production of plaintiff's cell phone was justified by extraordinary circumstances. No. CV-22-00190-PHX-JJT, 2023 WL 8622628, at *3 (D. Ariz. Dec. 13, 2023).

*Cordova v. EmblemHealth* is a referral order relating to the defendant's request for cell phone records from the plaintiffs. No. 22-CV-02933 (JHR), 2024 WL 1328380 (S.D.N.Y. Mar. 28, 2024).

Moreover, the overwhelming case law within the Sixth Circuit does not favor Defendant's position. In *FCA US LLC v. Bullock*, the court denied FCA's request for imaging of Bullock's personal devices. 329 F.R.D. 563, 569 (E.D. Mich. 2019). The court noted that FCA did not have any evidence that Bullock lied or acted in a disingenuous way when she said that she gave FCA every single document of unprivileged FCA information in her possession. *Id.* at 567. The court also noted the information on Bullock's computer was "certainly important" to FCA's claim, but the mere fact that FCA asserted a trade secrets claim did not give it free reign to examine all of Bullock's electronic devices. *Id.*

In *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, the court denied plaintiff's request to search defendant's computer systems, network servers, and databases. No. CIV.A. 2:06-CV-899, 2007 WL 1723509, at *1 (S.D. Ohio June 12, 2007). The court found that the plaintiff requested "intrusive examination" of its opponent's computer systems "on the mere suspicion, based solely on the nature of the claims asserted, that defendant may be withholding discoverable information." *Id.* at *2. In particular, the court found the plaintiff's few allegations of misconduct were insufficient to justify such discovery. *Id.* The court distinguished the case before it from other cases that involved findings by the court that the nonproducing party had either deliberately withheld discoverable information or acted in bad faith. *Id.* (citing *Playboy Enterprises, Inc. v. Welles*, 60 F.Supp.2d 1050, 1054 (S.D. Cal. 1999) (allowing access to party's computer system on a finding of systematic deletion of relevant e-mails after litigation had commenced); *Simon Prop. Grp. L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 641 (S.D. Ind. 2000) (allowing plaintiff to inspect

defendant's computer system because plaintiff demonstrated "troubling discrepancies with respect to defendant's document production")).

In *Hawkins v. Ctr. For Spinal Surgery*, the court recognized that "discrepancies or inconsistencies in the responding party's discovery responses may justify a party's request to allow an expert to create and examine a mirror image of a hard drive." No. 3:12-1125, 2015 WL 3795297, at *1 (M.D. Tenn. June 18, 2015) (citing *Simon*, 194 F.R.D. at 641). In *Hawkins*, defendant argued that it needed to determine the date on which each stolen document was placed on the flash drive to assess the plaintiff's claim that she was engaging in protected activities when she obtained the documents. *Id*. at *2. The plaintiff testified in a deposition as to the dates when she obtained the confidential documents, and the defendant offered no evidence suggesting the testimony was inaccurate. *Id*. Accordingly, the court found that a forensic examination of the flash drive was not justified by the evidence. *Id*.

Here, Defendant offers mere speculation that Plaintiff was engaging in activities inconsistent with the KCRA's definition of a disability. (DN 37, at PageID # 661) ("If Plaintiff was driving her car; grocery shopping; bowling; or performing just about any other manual task, then she likely is *not* "disabled" under the KCRA."). Defendant also argues that because Plaintiff "wants to marshal claims of alleged employment discrimination and retaliation," Defendant is entitled to her cell phone. (DN 37, at PageID # 661.) Finally, Defendant argues that because "Plaintiff is prepared to testify at trial that on all the days that she was tardy for work, she stayed after her regular shift end time of 3:30 p.m. in order to compensate for her tardiness" it is thus "entitled to challenge the veracity of these assertions by Plaintiff, and the location artifacts residing on Plaintiff's Apple iPhone will be instrumental in challenging and exposing those under-oath assertions and litigation strategies." (DN 35, at PageID # 389.) These arguments all flow from

43

the same premise: the location artifacts on Plaintiff's phone are relevant to challenge the veracity of her claims.  Certainly, the scope of discovery does include "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," but the Court may not compel intrusive examination of a computer system "based solely on the nature of the claims asserted."  *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, No. 2:06-CV-899, 2007 WL 1723509, at *2 (S.D. Ohio June 12, 2007).  The request must also be proportional to the needs of the case. FED. R. CIV. P. 26(b)(1).

Defendant also argues that forensic imaging of Plaintiff's cell phone is necessary because Defendant had attempted to obtain data points for Plaintiff's arrivals and departures before.  (DN 35, at PageID # 388.)  Defendant obtained day-care sign-in and sign-out records relating to Plaintiff's young daughter, but those records only recorded arrival and departure times, not whether Plaintiff was the one to drop off or pick up Plaintiff's daughter.  (*Id.* at PageID # 388-89.) While the Court agrees that Plaintiff's location artifacts would shed light on information missing from the daycare sign-in sheets, the Court does not believe this would justify such intrusive discovery.  A party may not inspect the physical hard drive of a computer merely because the party wants to search for additional document responses to the party's document requests.  *Hawkins*, 2015 WL 3795297, at *1; *See also McCurdy Grp. V. Am. Biomedical Grp., Inc.*, 9 F. App'x 822, 831 (10th Cir. 2001) ("Although ABGI was apparently skeptical that MG produced copies of all relevant and nonprivileged documents from the hard drive(s), that reason alone is not sufficient to warrant such a drastic discovery measure.").

Finally, Defendant argues that its forensic experts would also need to search Plaintiff's iPhone to ensure relevant data was not spoliated.  (DN 35, at PageID # 388 n. 10.)  Litigants certainly have a duty to preserve relevant information, including ESI, when they have notice that

they possess or control relevant evidence. *John B.*, 531 F.3d at 459. It is also true that courts have the authority to impose appropriate discovery sanctions when litigants breach that duty. *Id*. But a mere assertion that Defendant needs to ensure relevant data was not spoliated is not enough to justify forensic imaging. *See id.* at 460 ("In its memorandum opinion of October 9, 2007, the district court explained that it issued the contested orders because it believed that defendants had failed to comply with various discovery orders and had not properly preserved relevant ESI throughout the course of this litigation. The record is not sufficient for this court to question those conclusions. Even so, the record lacks evidence that defendants have intentionally destroyed relevant ESI in the past, and nothing in the record indicates that defendants are unwilling, or will refuse, to preserve and produce all relevant ESI in the future."). Forensic imaging is not a measure of first resort to correct potential discovery misconduct. *Id*. at 460-61. The Court has not been made aware of any reason to believe that Plaintiff has intentionally destroyed relevant ESI or demonstrated an unwillingness to preserve and produce relevant ESI. The fact that Plaintiff objected to the request of her cell phone does not mean that she is refusing to cooperate in discovery, as Defendant claims. (DN 37, at PageID # 657.)

Finally, the fact that Defendant has proposed a protective order does not change the fact that the Court may not order forensic imaging of computers without substantial justification. The Court certainly would see the wisdom in issuing a protective order covering the information produced from Plaintiff's cell phone *if* there were a justification for ordering production of the cell phone in the first place, but there is not. Accordingly, the Court will not order Plaintiff to produce her cell phone for forensic imaging.

Defendant's Motion for Extension of Time to Complete Discovery Deadline (Defendant Only) (DN 35) is **DENIED WITHOUT PREJUDICE** and Defendant's Second Motion to Compel (DN 35) is **DENIED**.

### 3.    Reasonable Expenses

If a motion to compel is denied, the Court must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. FED. R. CIV. P. 37(a)(5)(B). Unlike cases where courts grant motions in part, an award of fees is not optional if a court is denying or granting a motion completely. *Id.* But the Court must not order payment if the motion was substantially justified, or other circumstances make an award of expenses unjust. *Id.* The Court must decide whether a party's conduct was substantially justified based on four factors: whether the party's conduct is due to willfulness, bad faith, or fault; whether the adversary was prejudiced by the party's conduct; whether the party was warned that conduct could lead to the sanction; and in the event of a dismissal, whether less drastic sanctions were first imposed or considered. *Doe v. Lexington-Fayette Urb. Cnty. Gov't*, 407 F.3d 755, 765-66 (6th Cir. 2005) (quoting *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997)). Given that Plaintiff is not seeking dismissal, the final factor is not relevant to this analysis.

### a)    Willfulness, bad faith, or fault

A party's conduct is willful if the party could cooperate in discovery but refuses to do so. *Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995). A party's refusal to cooperate is done in good faith if it is based on a genuine dispute about which reasonable people could disagree. *Doe*, 407 F.3d at 765 (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

Here, this factor weighs against an award of reasonable expenses. Defendant sought production of Plaintiff's cell phone, which is not unusual in civil cases. *John B.*, 531 F.3d at 459. Moreover, the Court finds Defendant's instinct to seek approval for an additional deposition of Plaintiff reasonable considering the production of new documents. Nevertheless, a position can be justified even though it is not correct. *Pierce*, 487 U.S. at 556 n. 2 (1988). Accordingly, this factor weighs against an award of fees.

### b)    Prejudice

Whether the nonmoving party suffered prejudice is "tied partly" to whether the moving party's assertions were substantially justified. *See Osborn v. Griffin*, No. 2:11-CV-89-WOB-REW, 2014 WL 12647954, at *2 (E.D. Ky. July 7, 2014) (citing *Doe*, 407 F.3d at 766). Here, the Court finds that Defendant's assertions were substantially justified, and thus outweigh the prejudice to Plaintiff.

### c)    Warning

Some courts in the Sixth Circuit have held that the mere existence of Rule 37 is enough of a warning to justify an award of reasonable expenses. *See Osborn*, 2014 WL 12647954 ("In any event, in a real sense, Rule 37 puts every litigant on notice that poor discovery conduct can lead to sanctions."). Other courts have required more specific warnings to satisfy this factor. *See Nichols v. Cantoro's Cafe, L.L.C.*, No. 19-12945, 2020 WL 1872364, at *7 (E.D. Mich. Apr. 15, 2020) ("Nonetheless, the court has not provided a warning to Defendant. It will do so now.") (citation omitted). The Sixth Circuit likely would not have included this as a factor if the existence of Rule 37 alone were an adequate warning, and thus the Court finds the latter standard more persuasive.

Here, the Court notes that, before this order, the Parties have not been warned that their conduct in discovery could result in fees being assessed against them. Neither Party has requested

fees in either of their motions.  *Cf. Schnatter v. 247 Grp., LLC*, No. 3:20-CV-00003-BJB-CHL, 2024 WL 1337377, at *11 ("Finally, Schnatter's losses on two motions to compel previously and Defendants' express request for attorney's fees in the instant motion was sufficient warning that a failure to cooperate could lead to legal sanctions.").  Nor has the Court explicitly made this warning.  *See Nichols*, 2020 WL 1872364, at *7.  Accordingly, this factor weighs against an award of reasonable expenses.  Accordingly, the Court will not award Plaintiff her reasonable expenses in opposing this motion.

### III.    Order

Accordingly,

IT IS HEREBY ORDERED that:

(1)    Defendant's First Motion to Compel (DN 25) is **GRANTED IN PART**.  Plaintiff shall supplement her responses to Defendant's First Set of Requests for Production and Interrogatories in accordance with this order.

(2)    Defendant's Second Motion to Compel (DN 35) is **DENIED**.  Defendant shall not be compelled to pay for Plaintiff's expenses in opposing this Motion.

April 9, 2025

Colin H Lindsay, Magistrate Judge
United States District Court

cc:  Counsel of record